IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


ROBERT PETERSON,

                           Plaintiff,

      V.                                        No. 09-4122-SAC

EXIDE TECHNOLOGIES,

                           Defendant.


MEMORANDUM AND ORDER


        This case comes before the Court on Defendant's motion for summary judgment.

This is an employment termination case in which Plaintiff asserts that Defendant

terminated his employment in violation of his Family and Medical Leave Act (FMLA)

rights and in retaliation for his exercise of his state workers' compensation rights.

**Summary Judgment Standard**

        On summary judgment, the initial burden is with the movant to point out the

portions of the record which show that the movant is entitled to judgment as a matter of

law. *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992),

*cert. denied*, 506 U.S. 1013 (1992). In applying this standard, the court views the

evidence and all reasonable inferences drawn from the evidence in the light most

favorable to the nonmoving party. *Adler v. WalMart Stores, Inc.*, 144 F.3d 664, 670

(10th Cir. 1998). If this burden is met, the non-movant must set forth specific facts which

would be admissible as evidence from which a rational fact finder could find in the

non-movant's favor. *Id.*, at 671. The non-movant must show more than some

"metaphysical doubt" based on "evidence" and not "speculation, conjecture or surmise." *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Bones v. Honeywell Intern.*, 366 F.3d 869, 875 (10th Cir. 2004). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether the evidence is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. *See Pinkerton v. Colorado Dept. of Transp.*, 563 F.3d 1052, 1058 (10th Cir. 2009).

**Facts**

Plaintiff's counsel is experienced with this Court and this district, and is familiar with both the local rules and the rules of civil procedure which govern summary judgment practice. Nonetheless, counsel fails to adhere to those rules. Because counsel has repeatedly been admonished about this matter, the Court declines to review those familiar rules, believing that such an effort would be futile. *See e.g., Coleman v. Blue Cross Blue Shield of Kansas*, 487 F.Supp.2d 1225 (D.Kan. 2007); *Boldridge v. Tyson Foods, Inc.*, 2007 WL 1299197, 1 (D.Kan. 2007), *aff'd*, 280 Fed. Appx. 723 (10th Cir. May 30, 2008); *Ney v. City of Hoisington, Kan.*, 508 F.Supp.2d 877, 2007 WL 608263 (D.Kan. Feb. 22, 2007), *aff'd*, 264 Fed.Appx. 678 (10th Cir. Feb 06, 2008); *Rojo v. IBP, Inc.*, No. 02-4112-JAR, 2007 WL 593637 (D.Kan. Feb. 21, 2007), *aff'd,* 278 Fed.Appx. 850 (10th Cir. May 27, 2008); *Satterlee v. Allen Press, Inc.*, 455 F.Supp.2d 1236 (D.Kan. 2006). The Court specifically notes that counsel has been schooled by the court in what it means to properly controvert a factual statement. *See*

*Coleman*, 487 F.Supp.2d at 1233, n. 23. A defendant's factual statement is not properly controverted where, as here, it is fully supported by its citation to the record but plaintiff desires to add additional facts. Accordingly, to the extent that Defendant's statement of facts are supported by the record, they are largely deemed admitted due to plaintiff's failure to properly support his contentions that disputed facts exist that defeat Defendant's motion for summary judgment.

Plaintiff also provides his own statement of over 40 pages of additional facts for the Court's consideration, yet he offers no legal analysis, discussion, or even mention of the vast majority of them. Merely placing evidence in the record on summary judgment without showing the Court its legal significance is insufficient, because the Court will not construct legal arguments or theories on either party's behalf. *See Perry v. Woodward*, 199 F.3d 1126, 1141 n. 13 (10th Cir. 1999). Facts supported by the record but not shown to be relevant to any legal argument made by counsel may as well not be in the record.

The Court thus finds the following facts to be uncontroverted. Defendant manufactures and distributes batteries. Plaintiff began working for Defendant at its plant in Salina, Kansas in April of 1999 and was terminated on May 31, 2007. (Pretrial Order, p. 2) Beginning in 1999, and except for a brief period of time during 2002, Plaintiff held a number of "material handler" positions. A "material handler" is someone who uses machinery, such as a forklift or reach truck, to move materials to and from different parts of the plant. In 2004, Plaintiff became a "senior material handler."

As part of his material handler training, Plaintiff was instructed on the safe use of machines utilized by material handlers. Plaintiff understood from his safety training that

3

if he did not operate safely as a material handler, he could be subject to discipline up to and including termination. The job description for the position of senior material handler states in part:

> FAILURE TO PERFORM MATERIAL HANDLING DUTIES IN A SAFE, EFFICIENT MANNER WILL DISQUALIFY AN INDIVIDUAL AND THEY SHALL BECOME SUBJECT TO LAY OFF AND POSSIBLE TERMINATION.

Defendant considered operating the equipment in a safe manner to be one of the most important and essential duties of a material handler. Plaintiff agreed that operating the equipment safely is an important job duty of that position.

On May 27, 2007, Plaintiff was assigned to operate a forklift, transporting batteries through the plant. At that time, some or all of the normal "vapor lights" in the plant were off because of maintenance. The plant was lit to some extent by emergency lighting, some overhead fluorescent lighting, sky lights, and whatever ambient light entered through the open doors and the loading docks on that cloudy day. The forklift driven by plaintiff had its headlight on, and had a governor so its speed was limited to five miles per hour.[1] Plaintiff complained that the work was unsafe because of the lack of lighting. That morning, Plaintiff made more than ten trips through the plant on his forklift without incident, but had to avoid maintenance men walking in the dark across the aisles.

At 10:45 a.m., Plaintiff was transporting a pallet of batteries from the west side of

---

[1] The parties appear to treat forklifts as trucks in some, but not all, instances. The facts establish that the inside trucks are governed not to exceed five m.p.g. and the outside trucks are governed not to exceed seven m.p.g., but the record fails to establish which plaintiff was driving on May 27th. Viewing the facts in the light most favorable to the plaintiff, the Court finds that the forklift driven by the Plaintiff in the plant on May 27th could not exceed five m.p.h.

the plant to the east distribution center. The pallet of batteries was "shrink-wrapped" and contained three layers of batteries, which were "bigger batteries" of the type typically used in vehicles. Plaintiff was driving his forklift on a path that was wide enough to accommodate two forklifts, and no other forklifts were operating in that area. After plaintiff had turned to avoid a toolbox on the floor, he saw a "flash" to his left which startled him, and he looked in that direction while his forklift continued to move forward. When Plaintiff looked back at the path, he was only inches away from a permanent support pole, which was painted bright yellow.

The forklift driven by Plaintiff hit the support pole, causing some batteries to break through or escape from the shrink wrap and fall onto the floor in front of the forklift. "As a result of the crash, several batteries were damaged and battery acid leaked onto the floor."[2] Also "[a]s a result of the crash, plaintiff's head struck the rack on the forklift, causing injuries to his head, shoulder, and back, and some blurred vision."[3] Plaintiff's immediate supervisor completed an accident investigation form on which he commented that eight batteries were broken, some of them were cut in half, and he believed plaintiff was "going rather fast." Dk. 59 Exh. I, p. 2. Plaintiff's immediate supervisor took Plaintiff to a hospital where he received stitches to his head and was released. Defendant then placed Plaintiff on FMLA leave.

After this incident, Gary Thompson, the Distribution Center Manager, and Jayne Cornish, the Human Resources Manager, discussed what, if any, discipline should be

_____

[2]Stipulation, Pretrial Order, pp. 2-3.

[3] *Id.*

5

imposed. Mr. Thompson recommended that Plaintiff receive "severe" discipline because he believed that Plaintiff had been reckless and careless, as indicated from the extent of the damage, the nature and fact of Plaintiff's injuries, and the potential of injury to others. Ms. Cornish reviewed Plaintiff's personnel file, including its documentation of incidents over a year old, then concluded that Plaintiff had a history of unsafe and careless behavior. Believing that Plaintiff had violated Defendant's safety policy, Ms. Cornish recommended to the Plant Manager, Jim York, that Plaintiff's employment be terminated. Mr. York met with Ms. Cornish and received her summary of the May 27th accident and Plaintiff's personnel file, then agreed with her recommendation.

On May 31st, Ms. Cornish and Mr. Thompson told Plaintiff that his employment was being terminated because of his violation of health and safety policies. Ms. Cornish specifically stated that Plaintiff was being terminated because he was driving too fast and because of his accident on the 27th. During the meeting, Ms. Cornish handed Plaintiff a termination notice which stated:

> [Plaintiff] is hereby terminated for "SAFETY & HEALTH.
> Which is a Violation of Company Policy: Pg. 59-n of the employee handbook.
> Which States: Flagrant disregard of safety rules and practices or any other unsafe acts which endanger other employees.

Dk. 59, Exh. DD. This lawsuit followed. Additional facts are mentioned as appropriate in the discussion to follow.

**FMLA interference**

Although the Plaintiff's emphasis in his brief is on his state law retaliation claim, this Court first examines the FMLA claims because they give rise to this Court's subject matter jurisdiction. Three claims are made in this case: FMLA interference, FMLA

retaliation, and Kansas workers' compensation retaliation. *See* pretrial order. Defendant does not dispute the existence of a prima facie case in any of those claims. *See* Dk. 64, 67. Accordingly, the Court's focus is narrowed to Defendant's stated reasons for Plaintiff's termination, and whether they are pretextual. Because Plaintiff's claims vary somewhat in their burdens of proof, the Court finds it necessary to address them separately to some extent.

The FMLA authorizes qualified employees to take leave under defined circumstances, including the employee's own serious health condition. 29 U.S.C. § 2612(a)(1)(D). To establish an FMLA interference claim, Plaintiff must show: (1) that he was entitled to FMLA leave, (2) that some adverse action by the employer interfered with his right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of his FMLA rights. *Metzler v. Federal Home Loan Bank of Topeka*, 464 F.3d 1164 (10th Cir. 2006).

Because Defendant admits that Plaintiff has met this burden, the burden shifts to the Defendant to show that Plaintiff would have been dismissed even had he not taken FMLA leave. The *McDonnell Douglas* burden-shifting analysis does not apply to interference claims.

> Once a Plaintiff has proved that her employer has interfered with her right to take FMLA leave, the employer bears "the burden of proving that an employee, laid off during FMLA leave, would have been dismissed regardless of the employee's request for, or taking of, FMLA leave**."** *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 963 (10th Cir. 2002) (citing 29 C.F.R. § 825.216(a)(1)). However... "an employee who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting the request." *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir.1998).

*Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1289 (10th Cir. 2007). For purposes of this claim, the Court reviews the record to determine whether Defendant has met that burden, or whether a genuine issue of material fact exists with respect to Defendant's reasons for terminating Plaintiff. *See Metzler*, 464 F.3d at 1180.

**FMLA retaliation**

When analyzing FMLA retaliation claims under 29 U.S.C. § 2615(a)(2), the Court applies the burden-shifting scheme of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). In order to establish a prima facie case of FMLA retaliation, Plaintiff must demonstrate that: (1) he exercised a protected right under the FMLA; (2) defendant took an action that a reasonable employee would have found materially adverse; and (3) a causal connection exists between the two. *Campbell v. Gambro Healthcare, Inc.*,478 F.3d 1282 (10th Cir. 2007).

Because Defendant does not challenge Plaintiff's prima facie showing in this case, it becomes the Defendant's burden to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See Morgan v. Hilti, Inc.*,108 F.3d 1319, 1323 (10th Cir.1997). In the event Defendant meets that burden, it becomes Plaintiff's burden to produce evidence that the reason is pretextual, *i.e.*, unworthy of belief. *See id.; Campbell*, 478 F.3d at 1290. To establish a genuine issue as to pretext, Plaintiff must demonstrate that Defendant's "proffered non-discriminatory reason is unworthy of belief." *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995). He can meet this standard by producing evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and

8

hence infer that the employer did not act for the asserted non-discriminatory reasons."
*Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1203 (10th Cir. 2006) (quoting *Morgan*, 108 F.3d at 1323) (internal quotation marks omitted).

**Kansas retaliatory discharge**

When analyzing state-law retaliatory discharge claims, federal courts in Kansas apply the burden-shifting approach used in discrimination cases. *Hysten v. Burlington Northern Santa Fe Ry. Co.*, 372 F.Supp.2d 1246, 1254 (D.Kan. 2005). To make a prima facie case of retaliation, a Plaintiff must show that (1) he sustained an injury for which he could assert a future claim for benefits or filed a claim for worker's compensation benefits; (2) the employer had knowledge of Plaintiff's compensation claim or the fact that she had sustained a work-related injury for which the Plaintiff might file a future claim for benefits; (3) the employer terminated the Plaintiff's employment; and (4) a causal connection existed between the protected activity or injury and the termination. *Foster v. Allied Signal, Inc.*, 293 F.3d 1187, 1193 (10th Cir. 2002).

Because Defendant concedes the existence of Plaintiff's prima facie case, the burden shifts to Defendant to articulate a legitimate, nonretaliatory reason for terminating the employee. Where that burden is met, the Plaintiff has the burden of proving by a preponderance of the evidence that the reasons offered by the employer were merely a pretext for terminating him in retaliation for his compensation claim. *Id.* at 1194.

The plaintiff's burden in opposing a motion for summary judgment on his worker's compensation retaliation claim is to prove he was terminated "based on, because of, motivated by or due to" the defendant's intent to retaliate, *Foster*, 293 F.3d at 1192, by a

preponderance of the evidence that is "clear and convincing in nature." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (citing *Ortega v. IBP, Inc.*, 255 Kan. 513 (1994)).

> The Kansas Supreme Court recently reset the understanding of what clear-and-convincing evidence is under Kansas law: it now constitutes evidence that shows that the truth of the facts asserted is "highly probable." *In re B.D.-Y.*, 286 Kan. 686, Syl. ¶ 3, 187 P.3d 594 (2008).

*Schumacher v. Morris*, 219 P.3d 1243, 2009 WL 4639516, 21, J. Leben, concurring (Kan.App. 2009).

Defense counsel implies that this clear and convincing standard of proof should not be used at the summary judgment stage because in Kansas, the clear-and convincing-evidence standard is usually not applied on summary judgment. Dk. 64, p. 76. *See Rebarchek v. Farmers Co-op. Elevator & Mercantile Ass'n*, 272 Kan. 546, 552 (2001). The Tenth Circuit acknowledges that in Kansas courts a plaintiff in a retaliation case must prove his case at trial with "clear and convincing evidence," but "can successfully oppose a motion for summary judgment by a preponderance of the evidence." *Foster*, 293 F.3d at 1194. Nonetheless, the Tenth Circuit does not permit a federal plaintiff to apply that lower evidentiary standard at the summary judgment stage in federal court *See Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1129 (10th Cir. 2009).

This rule comes as no surprise to counsel, since he was specifically told by the Tenth Circuit in 2008 that federal courts apply the clear and convincing evidence standard to summary judgment motions in Kansas workers' compensation retaliatory discharge cases. *See Rojo*, 278 Fed.Appx. at 852 ("Contrary to Ms. Rojo's assertion, the district court applied the correct legal standard for assessing a claim of retaliatory

discharge under Kansas law... [in stating that] Ms. Rojo had the burden of proving her claim by a preponderance of the evidence that is clear and convincing in nature.") Even in Kansas courts, application of the lower burden of proof to summary judgment motions has recently been criticized. *See Schumacher*, 2009 WL 4639516, * 20- 21, J. Leben, concurring.

Although the Court will look to Kansas law to determine what elements a plaintiff must prove at trial to prevail on his claim, the Court will look exclusively to federal law to determine whether a plaintiff has provided enough evidence on each of those elements to withstand summary judgment. *Milne*, 575 F.3d at 1129. Accordingly, for his state law retaliation claim, the Plaintiff "must set forth evidence of a clear and convincing quality that, if believed by the ultimate factfinder, would establish that Plaintiff was more likely than not the victim of illegal retaliation by her employer." *Foster*, 293 F.3d at 1195. *See also Conrad v. Bd. of Johnson County Comm'rs*, 237 F.Supp.2d 1204, 1266-67 (D.Kan. 2002). With these burdens and standards of proof in mind, the Court examines the Plaintiff's claims.

**Defendant's burden/reason for termination**

Defendant contends that the Plaintiff would have been dismissed regardless of his taking of FMLA leave because of his violation of company policy on May 27th and his pattern of accidents or incidents demonstrating his carelessness, recklessness, or lack of safety.

Plaintiff asserts that Defendant must articulate a non-retaliatory reason unrelated to the accident and injury. Plaintiff contends that "because Kansas law prohibits firing of an employee as a result of a work injury, claiming that the employee engaged in unsafe

conduct does not constitute a non-retaliatory reason for the firing." Dk. 64, p. 77, citing *Marinhagen v. Boster, Inc.*, 17 Kan. App. 2d 532, 540 (1992). The Court disagrees, as the cited case did not examine an alleged violation of any safety policy.

Plaintiff's termination notice cited and quoted the specific safety rule which Plaintiff allegedly violated on May 27th - "flagrant disregard of safety rules and practices or any other unsafe acts which endanger other employees." This violation is listed among the "common dischargeable type offenses" stated in Defendant's progressive disciplinary policy. *See* Dk. 59, Exh. EE, pp. 52-60. The record includes a declaration under penalty of perjury from Plant Manager James York, who made the decision to terminate Plaintiff's employment. He considered Plaintiff's violation of Defendant's safety policy on May 27th to be flagrant and potentially unsafe, stating:

> Based on my own review of the photographs and the damage they depicted, I agreed with Ms. Cornish that...Plaintiff was driving too fast at the time of the crash and was not operating his forklift in a safe manner. Such conduct on Plaintiff's part was a flagrant violation of company health and safety policy and posed a threat to the safety of Plaintiff and other Exide employees.

Dk. 59, Exh. CC. The record also includes Ms. Cornish's testimony that Defendant's safety policies required material handlers to control the fork truck at all times and to drive in a safe manner. Dk. 59, Exh. K, p. 231-32. The employee handbook provides in its general Safety and Health provision: "Unless you are willing to be careful to avoid injury to yourself and your co-workers, you do not belong here at Exide." Dk. 59, Exh. EE, p. 15.

Ms. Cornish reviewed Plaintiff's personnel file before deciding to recommend his termination. It reflects his receipt of the following disciplinary warnings:

a. A written warning on August 15, 2000 for careless material handling that

resulted in damage to batteries, advising Plaintiff to be more careful;

b. A written warning on October 8, 2002 for unauthorized use of machinery resulting from Plaintiff's operation of a swing-reach truck that he was not certified to operate, which was stated to be a safety and health policy violation;

c. A written warning on October 26, 2003 for unspecified violation(s) of health and safety policies.

Each of the above warnings notified Plaintiff that further violations of company policy could result in termination.

Plaintiff's personnel file also contained the following relevant documentation of other matters:

a. A note that Plaintiff had run a forklift into a stationary pole while turning around on January 20, 2006.

b. A "Performance Expectations" memo to file dated April 5, 2007, from Plaintiff's supervisor noting some areas for improvement, including that Plaintiff "[m]ust follow all safety rules at all times," and "[m]ust drive under control at all times, including maintaining a safe speed." Dk. 59, Exh. P. Plaintiff signed this memo.

c. A "Performance Expectations Review" memo to file dated April 19, 2007, from Plaintiff's supervisor noting that Plaintiff was transferring to a new job[4] before the supervisor was able to fully evaluate Plaintiff's performance. The memorandum, signed only by Plaintiff's supervisor, noted:

> As of April 18, 2007, [Plaintiff] had not shown significant improvement or consistency in any of the areas previously mentioned in the initial performance expectations memo. Had the scheduled review taken place I would have recommended that [Plaintiff] be disqualified from material handling in department 134 for the following reasons:
>
> 1. Fails to follow safety rules. Does not wear seat belt or respirator at all times. Fails to maintain a safe speed and honk at all intersections.
>
> 2. ...
>
> 3. ...

Dk. 59, Exh. Q. The record confirms that the above accidents or incidents, some of which were over a year old, contributed to the decision to terminate the Plaintiff. Plaintiff had a history of multiple other incidents, as well, *see* Dk. 59, p. 9-10, but the Court has

---

[4]Plaintiff requested a transfer because he believed his supervisors were pushing him to drive the forklift faster.

disregarded them because the record fails to show that they were included in Plaintiff's personnel file or that Ms. Cornish otherwise relied upon those incidents in recommending termination.

Nonetheless, the evidence relied upon by Ms. Cornish in making her recommendation, and by Mr.York in making his decision, is sufficient to meet Defendant's burden of proving that the Plaintiff would have been dismissed regardless of his taking of FMLA leave because Defendant believed he had repeatedly violated its safety policies.

**Pretext**

Plaintiff attempts to demonstrate that Defendant's given reasons for terminating him are so weak, implausible, inconsistent, incoherent, or contradictory as to support a reasonable inference that it did not act for those reasons. Specifically, Plaintiff contends that pretext is shown by the following five factors: the timing of his termination; the minor nature of the May 27th incident; Defendant's creation of the dangerous conditions that led to the incident; Cornish's philosophy of blaming injured employees; and Defendant's firing Plaintiff in violation of its progressive disciplinary rules. *See* Dk. 64, p. 79 - 81.

**The timing of the termination**

Plaintiff contends that the closeness in time between his injury on May 27th and his termination on May 31st is probative of retaliatory motive. Dk. 64, p. 76. The Court agrees that events that are very close in time may be sufficient to satisfy the causation element of a Plaintiff's prima facie case. *See Trujillo v. PacifiCorp*, 524 F.3d 1149, 1157 (10th Cir. 2008); *Haynes v. Level 3 Communications, LLC ,* 456 F.3d 1215, 1228 (10th Cir. 2006), *cert. denied*, 549 U.S. 1252 (2007). But the Tenth Circuit has repeatedly held

that "temporal proximity alone is not sufficient to defeat summary judgment by showing that the employer's proffered reason is actually pretext for retaliation. *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1240 (10th Cir. 2004); *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1206 (10th Cir. 2000)." *Pinkerton v. Colorado Dept. of Transp.*, 563 F.3d 1052, 1066 (10th Cir. 2009).

> ... we have never allowed "even very close temporal proximity [taken alone] to operate as a proxy for the evidentiary requirement that the Plaintiff demonstrate pretext." *Metzler*, 464 F.3d at 1172 (quotations omitted). Rather, to show pretext [Plaintiff] "must ... present evidence of temporal proximity plus circumstantial evidence of retaliatory motive." *Id.*

*Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1290 -1291 (10th Cir. 2007). The same is true for Kansas workers' compensation retaliation claims. *See Hysten v. Burlington N. Santa Fe Ry. Co.*, 372 F.Supp.2d 1246, 1254-55 (D.Kan. 2005). Accordingly, the Court finds no pretext based solely upon the mere temporal proximity between Plaintiff's accident and taking of FMLA leave on May 27th, and his firing on May 31st. Additionally, in this kind of case where an employee is allegedly terminated for having violated a safety policy, termination often swiftly follows the safety violation, lessening the value of the proximity analysis in showing pretext.

**The circumstances and severity of the accident**

Plaintiff contends that an inference of pretext arises because he did not violate any rule on May 27th. Instead, Defendant required him to work in the dark even though he complained about the danger of doing so; he was required to avoid maintenance workers and a tool box in his way; and he was distracted by a flash of light that caused him to merely "snug the forklift up against the pole." Both Cornish and Thompson admitted that if Plaintiff had not had the May 27th accident, he would not have been

fired. Plaintiff believes this "is direct evidence of retaliation," Dk. 64, p. 78, but the Court disagrees, as the statement itself fails to show a discriminatory motivation. *See Hall v. U.S. Dept. of Labor, Admin. Review Bd.*, 476 F.3d 847, 854-55 (10th Cir. 2007) (explaining direct evidence). *See also Patten v. Wal-Mart Stores East, Inc.*, 300 F.3d 21, 25 (1st Cir. 2002) ("A statement that can plausibly be interpreted two different ways-one discriminatory and the other benign-does not directly reflect illegal animus, and, thus, does not constitute direct evidence.")

Plaintiff also challenges the severity of his accident, characterizing it as a minor incident, not a flagrant disregard of the rules, and not a "crash."[5] Plaintiff alleges that he did not violate the safety policy on May 27th because his disregard, if any, of safety rules or practices was not flagrant and his accident did not endanger other employees. But that allegation is refuted by Mr. York's affidavit stating his belief that Plaintiff's conduct "was a flagrant violation of company health and safety policy and posed a threat to the safety of Plaintiff and other Exide employees." When evaluating pretext, the relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether the employer honestly believed those reasons and acted in good faith upon those beliefs. *Stover v. Martinez*, 382 F.3d 1064, 1076 (10th Cir. 2004); *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1318 (10th Cir.1999), *overruled on other grounds by Nat'l R .R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

Plaintiff disputes the accuracy of the photographs that Mr. York reviewed because they differ from Plaintiff's memory of the accident scene. Plaintiff believes that

---

[5]Plaintiff has already stipulated that he had a "crash," however. *See e.g.*, Pretrial Order, p. 2, 3.

photographs show the batteries and acid on the floor farther away from the forklift than they actually were immediately after his accident. He told Ms. Cornish the photographs were not accurate when he first saw them. But Defendant shows the Court that the photographs were taken shortly after the impact, before any cleanup began, in accordance with its normal procedures. Plaintiff has not offered any evidence to show that Mr. York had any reason to believe the photographs were inaccurate, or that Mr. York otherwise did not attempt to make a reasoned judgment based on the facts presented to him. Mr. York could reasonably have believed that Plaintiff had violated the company's safety policy, and Plaintiff fails to raise a material question of fact that he did not violate any safety rule, but was nonetheless blamed for having done so. *See Pastran*, 210 F.3d at 1206. ("[T]he pertinent question in determining pretext is not whether the employer was right to think the employee engaged in misconduct, but whether that belief was genuine....").

Plaintiff additionally contends that he was never given a chance to tell his side of the story and that circumstances such as poor lighting, a startling flash of light, and obstructions in his path should have been taken into account and would have compelled discipline less severe than termination. But Ms. Cornish testified that she reviewed Plaintiff's own written report of the May 27th accident before she made her recommendation, and found no need to speak to Plaintiff in person. Any perceived unfairness in not getting to tell his side of the story in person is not indicative of pretext. *See Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1121 (10th Cir. 2007) (holding that employee did not show pretext where the employer failed to obtain a statement from the

employee prior to terminating her, contrary to usual practice, concluding that, "[a]lthough allowing [Plaintiff] to complete her side of the story would seem to be the most fair way of addressing the situation, we cannot say that [the supervisor's] failure to do so in these circumstances constitutes a disturbing procedural irregularity sufficient to prove pretext.") This is particularly so here, since Defendant's discipline policy states that a review of the file, not a personal interview, is standard procedure. *See* Dk. 59, Exh. EE, p. 55 ("When disciplinary action becomes necessary, your supervisor will review your file to determine what action should be taken in accordance with established procedures.")

Even if Mr. York had known about the poor lighting, the flash of light, and the obstacles in plaintiff's path at the time of the accident on May 17th, Defendant's policy gave Mr. York the discretion to balance any mitigating circumstances against the aggravating circumstances presented by Plaintiff's history of safety violations before that date, and to reasonably reach a decision to terminate Plaintiff's employment. The facts above fail to raise a material question of pretext arising from the fact of or circumstances surrounding Plaintiff's accident on May 27th.

**Violating its own disciplinary rules**

Plaintiff additionally contends that pretext is shown by Defendant's disregard of its progressive disciplinary policy. Plaintiff contends that per the policy, violations older than six months could not be used in making a termination decision, and that any write up older than one year had to be completely disregarded, yet he was fired for events that were over six years old. Defendant's progressive disciplinary policy lists the

following types of "warning notices": (a) First Written Warning; (b) Second Written Warning; (c) Indefinite Suspension, and (d) Discharge. The language which Plaintiff apparently relies on states:

> When disciplinary action becomes necessary, your supervisor will review your file to determine what action should be taken in accordance with established procedures. If it has been LESS than 6 months since you received your previous warning, you should receive the next step in the progressive disciplinary process. However, if it has been 6 months or more, but less than 1 year since your last disciplinary action, then the last step will be REPEATED. If it has been 1 year or longer since your last disciplinary action, then you will start over, however, all disciplinary actions remain a permanent part of your file.

*Id.*

Plaintiff's argument has facial appeal only if the Court ignores other language in the same policy which reserves management discretion and refutes the mandatory nature of step progression. As the purpose of the policy states:

> ...employees should clearly understand that the extent to which progressive discipline is imposed is in the sole and exclusive discretion of management. Nothing in this policy shall be deemed to limit the right of the company to terminate an employee at any time for any reason.

Dk. 59, Exh. EE, p. 53. Ms. Cornish testified that disciplinary actions older than a year do not apply to "steps in progression" but may be considered in reviewing an employee's entire history. Her practice is to always review the entire history before terminating an employee.

The policy additionally states a partial list of common violations which would require "appropriate progressive disciplinary action to be taken up to and including discharge." Included is "any violation of established safety and health policies, procedures or work practices." *Id.*, p. 56. The policy then separately lists "common dischargeable type offenses" by which employees subject themselves to immediate

19

discharge, including: "Safety - flagrant disregard of safety rules and practices or any other unsafe acts which endanger other employees." *Id.*, p. 57.

Defendant thus had no policy requiring progressive discipline when an employee flagrantly disregarded safety rules or endangered other employees. Instead, Defendant's policy made it clear that immediate discharge could result from such acts. Accordingly, Mr. York's decision to terminate Plaintiff without progressing through each of the progressive disciplinary steps was within the discretion afforded to him by the relevant discipline policy and does not give rise to an inference of pretext. In some cases, pretext can be shown by "evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000)." *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1119 (10th Cir. 2007). But here, Defendant's company policy preserved discretion, rather than prescribing the action to be taken by the Defendant under the circumstances.

Similarly, Defendant's review of disciplinary actions older than one year is not contrary to Defendant's policy. That progressive discipline policy expressly provides that "all disciplinary actions remain a permanent part of [an employee's] file." Dk. 59, Exh. EE, p. 55. If Defendant's employees could not consider all disciplinary actions in making the important decision whether to terminate or retain an employee, there would be no reason for those documents to be maintained, and the policy's language mandating retention of warnings older than a year would be meaningless. As a basic rule of construction, this Court favors reasonable rather than unreasonable interpretations of a written document, and attributes meaning to all language included in the document

rather than dismissing some as mere surplusage. Each part of a document is to be construed in connection with its other provisions, so that so far as possible, all may harmonize.[6] The reasonable inference arising from the fact that Defendant's policy requires all disciplinary actions to remain a permanent part of an employee's file is that those actions may be reviewed and relied upon in the future, even if they are not "current" for purposes of step progression.

Even assuming for the sake of argument that Defendant failed to follow its progressive discipline policy, that may not be sufficient to show pretext, standing alone. *See Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1222 (10th Cir. 2007) ("even if T-Mobile fell short of Berry's expectation of progressive discipline, this fact adds little to the pretext analysis. The mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the substantive reasons given by the employer for its employment decision were pretextual.") The record, read in the light most favorable to the Plaintiff, fails to include any evidence from which a reasonable inference could be drawn that Defendant's proffered reasons for his firing are pretextual.

The record shows that Plaintiff would have been dismissed regardless of his taking of FMLA leave, compelling summary judgment on Plaintiff's FMLA interference claim. The record additionally fails to show a genuine issue of material fact with respect to whether Defendant's reasons for terminating Plaintiff are pretextual, as is necessary for Defendant's FMLA and workers' compensation retaliation claims.

_____

[6]Although the Court is applying basic rules of construction used in examining contracts, it has no need to determine and does not determine whether the employment handbook in this case constitutes a contract.

IT IS THEREFORE ORDERED that Defendant's motion for summary judgment (Dk. 58) is granted.

Dated this 16th day of February, 2011.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge